**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-01469-JLK

RONNIE KEYES,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant.

---

**PLAINTIFF'S SURREPLY TO UNITED STATES' REPLY TO MOTION TO DISMISS**

---

Pursuant to this Court's Order, [Doc. 44], Plaintiff, by and through his attorneys David Lane and Liana Orshan, of KILLMER, LANE & NEWMAN, LLP, respectfully submits this Surreply to Defendant United States' Reply to its Motion to Dismiss, [Doc. 43], and states in support the following:

## I.    INTRODUCTION

Defendant's reply in support of its motion to dismiss rests almost entirely on one faulty premise. Contrary to Defendant's repeated assertion, GEO's Aurora Detention Facility ("ADF") ***was not solely*** responsible for providing medical care to pretrial detainees in its custody. Rather, as plainly shown from the language of GEO's contract with the United States Marshals Service ("USMS"), the USMS retained authority over providing detainees like Plaintiff with necessary medical care outside of the detention facility. Because the USMS voluntarily took custody of Plaintiff so as to deprive him of

1

his normal opportunities for protection, under the Federal Tort Claims Act ("FTCA"), through reference to Colorado state tort law, the USMS had a duty of care to Plaintiff in providing for his basic needs, such as obtaining adequate medical care. While the USMS contracted with GEO for GEO to meet *part* of that duty by providing medical care while Plaintiff was housed at ADF, the parties' contract expressly shows that the USMS retained—did not delegate to GEO—another part of the duty, that of providing medical care to Plaintiff outside of ADF, i.e., offsite.

As this Court has apparently recognized in its Order for a Surreply, [Doc. 44], if and once the USMS had notice that ADF was not meeting Plaintiff's medical care needs, the USMS's retained duty to provide Plaintiff offsite medical care required the USMS to take reasonable affirmative action to protect Plaintiff through the provision of such care. In failing to do so, the USMS breached its duty of care to Plaintiff, imposed by the FTCA and substantive Colorado common law. The USMS's acts and omissions equaled nothing more than an unreasonable decision not to provide medical care that it was responsible for providing. Whatever the contours of the FTCA's independent contractor and discretionary function exceptions, neither exception covers the situation here: simple and straightforward negligence by the USMS in performing its duty of care to a detainee under its custody.

## II.    FACTS

Contrary to Defendant's assertions, this Court may and should consider the Complaint's allegations in resolving Defendant's motion to dismiss. While Rule 12(b)(1) permits a party to challenge the facts upon which subject matter depends through

extrinsic material, the materials attached to Defendant's motion challenged very few allegations actually relevant to its jurisdictional arguments.[1] To the extent that Defendant does not challenge the truthfulness of Plaintiff's allegations, but rather merely questions the sufficiency of the allegations in establishing subject matter jurisdiction, this Court must accept the allegations in the Complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). While this Court may also consider extrinsic evidence that is relevant to jurisdictional facts, the allegations still constitute evidence to be considered by the court. *See Rhoades v. United States*, 950 F. Supp. 623, 627 (D. Del. 1996).

Although this Court may consider extrinsic evidence that is properly relevant to the jurisdictional challenge, if this Court intends to rule based on disputed facts, this Court must first allow Plaintiff the opportunity to conduct discovery. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the

---

[1] As explained in Plaintiff's response to the motion to dismiss, *see* [Doc. 37] at 14-18, this Court must deny Defendant's motion to dismiss, and disregard its extrinsic material, to the extent that the motion and attached material address the merits of the case, rather than jurisdiction. "Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter." *Glapion v. Castro*, 79 F. Supp. 3d 1207, 1212 (D. Colo. 2015). To the extent that Defendants' arguments and declarations challenge the reasonableness of the USMS's actions in response to notice that ADF was not providing adequate medical care, that material is relevant to whether Defendant was negligent, not whether this Court has subject matter jurisdiction. Whether the USMS acted reasonably in believing Dr. Peterson's assurances that ADF was providing Plaintiff adequate care does not address whether the USMS had an undelegated duty to provide Plaintiff offsite medical care and whether the discretionary function exception to the FTCA shields the USMS's decision not to provide such care. Consequently, any extraneous material challenging the merits of the case may not be considered in deciding Defendant's Rule 12(b)(1) motion without converting it into a motion for summary judgment and allowing Plaintiff discovery as necessary to respond (which would entail, at the very least, the opportunity to depose the declarants). *See Boellstorff v. State Farm Mut. Auto. Ins. Co.*, No. 05-cv-02192-MSK-CBS, 2006 U.S. Dist. LEXIS 99186, at *5-6 (D. Colo. June 7, 2006).

factual issues raised by that motion." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). "A refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant," and "[p]rejudice is present where pertinent facts bearing on the question of jurisdiction are controverted." *Id.* (citation omitted).

The three areas of specific inquiry this Court prescribed for this Surreply may show the need for discovery. The first two topics address what notice the USMS had regarding Plaintiff's medical condition and needs and the care ADF provided him. Plaintiff knows of at least two instances when USMS deputies were present in the courtroom for pretrial hearings at which Plaintiff's medical condition and needs, as well as GEO's failure to provide adequate medical care, were discussed. *See* **Exs. 1, 2**, *Pretrial Hearing Transcripts* (showing that Plaintiff was present in the courtroom, which would have required at least one USMS deputy to be present as well). In addition to Plaintiff's, his family's, and his criminal defense team's numerous and repeated communications to the USMS and complaints which the USMS knew about that showed Plaintiff's medical condition was deteriorating at ADF (the existence of which Defendant does not contest), *see* [Doc. 37] at 4-5, along with the requests for offsite medical care ADF submitted to the USMS discussed next, the information the USMS learned from these appearances sufficiently shows that it knew or should have known that Plaintiff was at risk of serious injury or death. However, Defendant may have other information within its possession or control regarding other pretrial hearings at which USMS deputies were present that Plaintiff would need discovery to obtain.

Regarding this Court's second topic of inquiry, requests for offsite medical care, the specific records are entirely within Defendant's possession and control. In Plaintiff's state court case against GEO, Plaintiff learned about two requests for offsite medical appointments submitted on or around August 15, 2016, and August 29, 2016, but nothing further about the requests. When Plaintiff's counsel specifically asked GEO for records relating to those requests, GEO responded that it did not have any further responsive information. The most information Plaintiff has obtained about these requests is from Defendant's declarant Deputy Fleck who stated that "ADF requested authorization for outside medical care for Keyes in August 2016… On August 17, 2016, USMS Headquarters notified the District of Colorado [USMS Office] that the documents it submitted were too old and it requested more current information. ADF provided the USMS with the necessary information to DUSM Fleck on August 30, 2016, and on August 31, 2016, USMS Headquarters approved the second request for outside medical care for Keyes." [Doc. 19-3], ¶¶ 18-19. Defendant did not provide any documents regarding these requests and the USMS's response in its required disclosures under Rule 26(a)(1) (a deficiency that Plaintiff has asked it to rectify). Thus, to obtain further information about the requests and their contents, Plaintiff would need discovery.

Regardless, along with the multitude of other information the USMS had indicating that ADF was not providing adequate medical care to Plaintiff and Plaintiff's condition was deteriorating, the requests should have alerted the USMS that Plaintiff required immediate offsite medical care, which it had the authority to order under its contract with GEO. Rather than provide such care, not only did the USMS take no

immediate action in response to ADF's August 15, 2016, request for approval for offsite medical care for Plaintiff, the USMS essentially rejected the request out of hand because "the documents…submitted [with the request] were too old." *Id.* at ¶ 19. But ultimately, whether this response or any other action or omission by the USMS shows negligence, the fact that ADF needed to and did seek approval for offsite medical care from the USMS shows that the USMS retained authority and responsibility for providing offsite care to ADF detainees. Accordingly, for purposes of this Rule 12(b)(1) proceeding, which does not involve addressing the merits of Plaintiff's tort claim, this Court should find that GEO was not ***solely*** responsible for providing medical care to Plaintiff because the USMS did not delegate to GEO its entire duty of providing medical care to pretrial detainees housed at ADF. *See Harvey v. United States,* 2017 U.S. Dist. LEXIS 106128, at *2-3 (S.D.N.Y. July 10, 2017) (denying the defendant's motion to dismiss a complaint against ICE alleging inadequate medical care at a detention center run by an independent contractor because "federal ICE employees retained significant responsibilities regarding off-site medical care for [ICE] detainees").

Once it is clear that the USMS retained a duty of care to Plaintiff, it also becomes clear that whether the USMS breached its duty is a question of Colorado tort law. Thus, the resolution of this Court's third topic for this Surreply, "the emergence of any independent duty for the Marshals Service to investigate once it had knowledge of Mr. Keyes' medical complaints," [Doc. 44], must be determined by reference to tort law principles. In failing to take any action in response to Plaintiff's complaints besides contacting Dr. Peterson, whether the USMS acted as a "reasonably prudent person"

would have "under the same or similar circumstances" is ultimately a question of fact, to be decided on the merits. *McCormick v. United States*, 539 F. Supp. 1179, 1182 (D. Colo. 1982) (Kane, J.) ("Under Colorado law, negligence is a deviation by the defendant from the reasonable standards of care owed to the plaintiff, which naturally and foreseeably results in injury to the plaintiff; it is failure to act as a reasonably prudent person would under the same or similar circumstances."); *see also United Blood Servs. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992); *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 266 P.3d 412, 416 (Colo. App. 2011).

In addition to duties imposed by tort law, however, the USMS may have had a duty to further investigate Plaintiff's complaints and concerns that was prescribed by federal law or policy, or the USMS's internal rules or regulations. Unless and until Plaintiff conducts discovery, whether such a source of duty exists will remain unknown. Accordingly, although Plaintiff believes that his Complaint, the parties' contract, and the extrinsic materials Defendant attached to its motion to dismiss show that neither the independent contractor nor the discretionary function exceptions to the FTCA apply and this Court must deny Defendant's motion, if this Court finds that there is additional information that would be relevant to Defendant's jurisdictional challenges, such information must be obtained via discovery before this Court rules on the motion.

### III.  ARGUMENT

**A. The independent contractor exception to the FTCA does not apply because Defendant's liability is premised on the USMS's breach of its undelegated duty to provide offsite medical care to Plaintiff.**

> **1.  The parties' Contract plainly shows that ADF was not *solely***

**<u>responsible for providing medical care to Plaintiff.</u>**

In its reply to its motion to dismiss, Defendant blatantly ignores provisions of the contract between GEO (ADF) and the USMS ("Contract") that show the USMS retained authority over providing pretrial detainees at ADF offsite medical care. While Defendant explained where in the contract to find the provision stating that "[ADF] is solely responsible for the safety and well being of the federal detainees" at ADF, *see* Contract, [Doc. 37-1] at 1, Defendant did not acknowledge that this provision appears to contradict more specific provisions in the contract relating to the USMS's responsibilities to provide offsite medical care. Under fundamental principles of contract interpretation, these specific provisions control over the general statement on which Defendant extensively relies in making its arguments.

"[T]he purpose of contract interpretation is to ascertain the intent of the parties by ensuring that contracts are construed consistently with the well-established principles of interpretation." *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1060 (D. Colo. 2013) (citation omitted). "When construing a contract, courts must *not* view clauses or phrases in isolation," but rather "must examine the contract as a whole and attempt to determine the intent by reference to *all* of the contract's terms and provisions." *Id.* (emphasis in original) (citation omitted). However, courts do not give the same weight to all provisions in a contract; "it is well established under the generally applicable rules governing contract interpretation that specific provisions…take precedence over more general provisions." *Cogswell v. Merill Lynch, Pierce, Fennder & Smith*, 78 F.3d 474, 480 (10th Cir. 1996); *see also FDIC v. Kan.*

*Bankers Sur. Co.*, 105 F. Supp. 3d 1234, 1243 n.4 (D. Colo. 2015) ("[I]t is a basic principle of contract interpretation that a more specific provision controls the effect of general provisions." (quoting *E-470 Pub. Highway Auth. v. Jagow*, 30 P.3d 798, 801 (Colo. App. 2001)); *Restatement (Second) of Contracts* § 203 (1981) ("In the interpretation of a promise or agreement or a term thereof…specific terms and exact terms are given greater weight than general language.").

The statement that Defendant cites appears under the section heading "Brief Description" on the first page of the parties' Contract, which is entitled "Contract Award." [Doc. 37-1] at 1. Another section of that same page provides that the "[r]ights and obligation of the parties to [the] contract shall be subject to and governed by this document and *any documents attached* or incorporated by reference." *Id.* (emphasis added). In a fourteen-page document attached to the Contract Award entitled "Performance Statement of Work," the parties agreed that "[ADF] will submit to the USMS District of Colorado requests for approval of all treatment to be provided outside the facility. The USMS shall be responsible for the cost of USMS approved outside medical treatment." [Doc. 37-1] at 7. Reading the parties' Contract as a whole, this more specific provision expressing that the USMS retained responsibility over—and in fact, had the final word in—making decisions relating to offsite medical care for ADF detainees must take precedence over the general statement cited by Defendant. "[S]pecific provisions in [a] contract express more exactly what parties intend than broad or general clauses." *Diebold Enters. Sec. Sys. v Low Voltage Wiring, Ltd.*, 597 F. App'x 475, 485 (10th Cir. 2015) (quoting *Green Shoe Mfg. Co. v. Farber*, 712 P.2d 1014, 1016

(Colo. 1986)).

If the two provisions cannot be read together harmoniously, the more specific provision still controls. "The ordinary rules in respect to the construction of contracts is…that where there are two clauses in any respect conflicting, that which is specifically directed to a particular matter controls in respect thereto over one which is general in its terms." *Cogswell*, 78 F.3d at 480-81 (quoting *Mutual Life Ins. Co. v. Hill*, 193 U.S. 551, 558 (1904)). In this respect, if general and specific clauses conflict, the "latter should generally be held to operate as a modification and pro tanto nullification of the former." *Id.* (quoting 3 A. Corbin, *Corbin on Contracts* § 547, at 176 (1960)); *see also Restatement 2d of Contracts* § 203 *cmt. e* ("Attention and understanding are likely to be in better focus when language is specific or exact, and in case of conflict the specific or exact term is more likely to express the meaning of the parties with respect to the situation than the general language.").

If, however, this Court still has doubts of the parties' intentions after resort to the basic canons of contract interpretation, before deciding Defendant's motion to dismiss, this Court must permit Plaintiff the opportunity to conduct discovery, especially depositions, to determine the parties' actual intent. "[W]hen [a] trial court determines that ac contract is ambiguous,…extrinsic evidence is admissible to clarify the parties' intent," which "then becomes a question of fact." *Baum v. Great W. Cities, Inc.*, 703 F.2d 1197, 1205 (10th Cir. 1983). "[A] contract is ambiguous if it is fairly susceptible to more than one interpretation." *Stroh Ranch Dev.*, 935 F. Supp. 2d. at 1060 (citation omitted). To determine if a particular term is ambiguous, "the language of the agreement must be

constructed by application of the accepted meaning of the words *with reference to all of its provisions.*" *(In re: Parsons)*, 272 B.R. 735, 753 (D. Colo. 2001) (emphasis added) (citation omitted). When parties "use facially contradictory language,…it is appropriate to examine extrinsic evidence to determine if [it]…sheds lights on the parties' intent and on the terms' proper interpretation." *Nat'l Union Fire Ins. Co. v. Fed. Ins. Co.*, 213 F. Supp. 3d 1333, 1343-44 (D. Colo. 2016). Thus, although Plaintiff believes that the parties' Contract plainly shows that they intended that the USMS would retain authority over ADF detainees' offsite medical care (at least in nonemergent situations)—and therefore the USMS may potentially be liable for breaching its duty to provide such care—if this Court disagrees, it must provide Plaintiff the opportunity to obtain and present evidence regarding the parties' true intent.

## 2. <u>The United States is liable for breaching duties that it owed Plaintiff that it did not delegate to GEO.</u>

As Plaintiff explained in his response to Defendant's motion to dismiss, [Doc. 37] at 21-27, "[e]ven where [the government] has delegated some responsibilities to an independent contractor, the [government] may still be held separately and directly liable for its own negligence." *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016). In this circumstance, courts must "determine whether [p]laintiffs have alleged a separate nondelegable or undelegated duty, which the United States could be held directly liable for breaching." *Id.* While the USMS delegated to GEO the responsibility of providing ADF detainees adequate medical care inside the facility, the USMS did not delegate its *entire* duty of care to provide adequate medical care to Plaintiff because it retained

responsibilities over offsite medical care.

Defendant's argument to the contrary relies on the general provision that GEO was "solely" responsible for safety and well-being of detainees—which, as discussed in the previous section, must cede to the Contract's more specific provisions regarding medical care—and a misleading characterization of Plaintiff's argument. Defendant states incorrectly that Plaintiff's argument is based on the Contract provision that the USMS must pay for offsite medical care. But Plaintiff's argument is instead that the USMS's undelegated duty to provide offsite medical care lies in the Contract's provision requiring the USMS to ***approve*** all of ADF's requests for nonemergent offsite medical appointments. *See* [Doc. 37-1] at 7. For this reason, contrary to Defendant's assertion that the USMS played no role in determining whether ADF detainees' medical treatment was appropriate or necessary, the USMS in fact had the final say in making this determination as to all nonemergent offsite medical care. The USMS's approval or denial of a request from ADF for an offsite medical appointment for a detainee indisputably constituted a determination whether the requested medical care was appropriate or necessary for that detainee.

Merely because GEO could have obtained emergent offsite medical care for a detainee without prior approval by the USMS—and probably should have obtained emergent medical care for Plaintiff sooner than it did—does not show that the USMS cannot also be liable for the failure to deliver timely and adequate offsite medical care once on notice that such care might be necessary. The fact that an independent contractor jointly may have been responsible for a plaintiff's injury does not relieve the United

States from liability "where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort." *Berkman v. United States*, 957 F.2d 108, 114 (4th Cir. 1992). "[T]he fact that the FTCA does not waive sovereign immunity for claims against independent contractors does not preclude claims based on closely related acts committed by government employees." *Hale v. United States*, 2015 U.S. Dist. LEXIS 161237, *13 (D.D.C. Dec. 2, 2015); *see also Balter v. United States*, 2014 U.S. Dist. LEXIS 48594, at *105-10 (M.D. Pa. Apr. 7, 2014) (holding that the independent contractor exception did not shield the United States from liability for delay in providing medical care to a detainee at a federal detention center because scheduling medical appointments like the one the plaintiff needed "required the fulfillment by the [g]overnment and [an independent conractor] of separate but inter-dependent obligations," and both the government and the contractor breached those obligations).

Despite Defendant's attempts to distinguish it, there is no reason why this Court should not follow *Harvey*, in which the court, faced with almost the exact same facts, held that the independent contractor exception did not bar an FTCA action against the United States based on a detainee's death from cancer at a private jail. As Plaintiff explained in his response to the motion to dismiss, *see* [Doc. 37] at 23-25, *Harvey* found that the independent contractor exception was inapplicable because Immigration and Customs Enforcement ("ICE") had "delegated only part of [its] duty to ensure adequate and timely medical care for its detainees" to the private jail. 2017 U.S. Dist. LEXIS 106128, at *11. Like here, "ICE retained the duty to ensure adequate and timely health care whenever detainees required non-emergent off-site medical care." *Id.*; *see also id.* at

*4 (stating that, per ICE's contract with the jail, almost identically to this case, ICE required the jail to "request and receive prior approval from [ICE] if a detainee require[d] non-emergent off-site care…. [ICE] [could] override or reject [the jail's] request if it determine[d] that another form of care [was] cheaper or better fit[] detainee needs"); *id.* at *13 ("ICE had ultimate authority to approve or deny all off-site non-emergent requests.").

Defendant's attempt to distinguish *Harvey* because the contract in *Harvey* also contained the provision that ICE retained "agent and final health authority" regarding nonemergent offsite medical care is unavailing. The fact that the same language is not found in the Contract here is not determinative because the intent and effect of the Contract's language is the same. In providing that ADF is required to obtain USMS approval for all nonemergent, offsite medical appointments, the Contract plainly contemplates that the USMS has the final authority over such matters. The USMS thus "retained significant responsibilities regarding off-site medical care for its detainees [at ADF],…creat[ing] a positive duty of care" sufficient to a support a claim that the USMS itself was negligent. *Id.* at *2. Because the USMS "undeniably had a duty of care toward [Plaintiff] that was separate from those duties delegated to [ADF]," this Court has subject matter jurisdiction. *Id.* at *16. The only question is whether the USMS breached its duty of care in performing those duties, but that question relates to the merits of Plaintiff's FTCA claim, not Defendant's jurisdictional motion. For purposes of subject matter jurisdiction, Plaintiff sufficiently alleged that the USMS was negligent by violating its undelegated duties and responsibilities: ensuring that Plaintiff received timely and

adequate offsite medical care.

### 3. The independent contractor exception does not shield the USMS from liability for its own negligence.

Because Plaintiff seeks to hold the USMS liable for its own breach of undelegated duties, it is irrelevant whether the USMS had the ability to physically control the day-to-day operations of ADF employees, as that determination relates only to whether GEO was an independent contractor. "The independent contractor exception…has no bearing on the United States' FTCA liability for its own acts or omissions." *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016) (citing *Logue v. United States*, 412 U.S. 521, 532-33 (1973)). Rather, the independent contractor exception "excludes liability where the negligent treatment of a federal prisoner is the fault ***only*** of a nonfederal facility holding the prisoner under contract with the Marshals Service." *Acosta v. United States Marshals Serv.*, 445 F.3d 509, 514 (1st Cir. 2006). Thus, "a determination that the United States has declined to exercise control over the day-to-day operations of its contractor is not the end of the analysis." *Edison*, 822 F.3d at 518.[2]

Defendant ineffectively attempts to distinguish this line of cases by arguing that when the Supreme Court remanded *Logue* for reconsideration of the defendant USMS deputy's ***own*** negligence, the critical fact leading to the remand was that the deputy

---

[2] In fact, *Bethae v. United* States, the case on which Defendant relies in its reply brief to argue the applicability of the independent contractor exception, concludes that although there was no subject matter jurisdiction over the plaintiff's claim against the United States for the negligence of its contractor—a local jail at which the USMS had placed the plaintiff—the independent contractor exception was not applicable to the plaintiff's allegation specifically regarding the USMS and its agents' acts. 465 F. Supp. 2d 575, 581 (D.S.C. 2006)

exercised control and authority over the jail employees when he instructed them how to detain the decedent. *See* [Doc. 43] at 7. However, nothing in the opinion even suggests that the Court found this fact significant. Rather, after finding that the USMS ***did not*** exercise control over the jail's employees and therefore the jail's employees were not federal employees, the Court held that this finding did not end the case because the USMS could still be liable for its own employees' negligence. *Logue*, 412 U.S. at 532-33. Whether the type of fact pattern here requires that the negligence take the form of acting unreasonably in directing the employees of a federal contractor or whether the negligence may be based on some other act or omission, the Court takes no position. Regardless, even assuming *arguendo* that the former were a requirement, Plaintiff's claim against the USMS meets it. Plaintiff alleges that upon notice that ADF was not meeting his medical needs and his medical condition was deteriorating, the USMS should have exercised control over the ADF staff by directing that they take him to a hospital or obtain appropriate offsite medical care, which the USMS plainly had authority to do per the parties' Contract.

Based on very similar facts, the Federal District Court of North District of Ohio concluded that the USMS's potential to direct a federal detainee's medical care gave rise to a duty of care that was sufficient for the plaintiff to establish subject matter jurisdiction. In *Estate of Rodriguez v. United States*, the USMS placed a pretrial detainee at a private prison, where, according to the Complaint, staff failed to properly monitor and treat his diabetes; the USMS knew he needed medical care that he did not receive at the prison, yet it failed to take any reasonable measures to address this serious need. 2015

U.S. Dist. LEXIS 75037, at *17-18 (N.D. Ohio May 22, 2015). Like here, every time the prison sent the detainee for offsite medical care, the USMS needed to approve and pay. *Id.* at *19, *21. Also, like here, the USMS was continuously notified of the detainee's medical status, including receiving notice several times of the detainee's deteriorating condition "though motions filed with the district court, including at least one instance of a discussion of the situation with the district court in open court." *Id.* at *20. Likewise, the prison submitted several requests to the USMS for offsite medical care. *Id.* at *21-22.

Rejecting the United States' argument that the independent contractor exception barred the detainee's FTCA claim, the court held that the USMS "had a positive duty of care" to the detainee, because, for example, the USMS "required pre-authorization, and approved or disapproved, of requests for medical treatment." *Id.* at *25. The court thus concluded that the detainee had sufficiently alleged negligence by the USMS itself so as to fall within *Logue*'s holding that the independent contractor exception does not bar FTCA claims alleging the direct negligence of government employees. *Id.*

The fact that Plaintiff seeks to hold Defendant liable for its own negligence and not the negligence of GEO also shows that, contrary to Defendant's argument, [Doc. 43] at 17-19, Plaintiff's claim is not based on any failure by the USMS to supervise Dr. Peterson. Acting reasonably—not negligently—in response to notice that Plaintiff's condition was deteriorating at ADF could have taken multiple different forms, but it did not require the USMS to exercise supervisory control over Dr. Peterson. Rather, it required the USMS to reasonably perform its undelegated duty of care to Plaintiff in the areas over which it retained authority: once on notice that Plaintiff's medical condition

was deteriorating, the USMS had a duty to provide him adequate and timely offsite medical care.

In an analogous context, other FTCA cases addressing the intentional torts exception to the FTCA—which provides that the United States is not liable for intentional torts committed by government employees—have explained that while the United States may not be liable for failing to supervise an employee, the United States may nevertheless be liable when it fails to perform a separate and independent duty. While a plaintiff thus cannot "circumvent" the exception by pleading negligent supervision if the only basis for the defendant's liability was by virtue of the defendant's employment relationship with the employee, allegations that the defendant's liability depended on its breach of an independent duty—not its failure to supervise the employee—are sufficient for subject matter jurisdiction. *Boles v. United States*, 3 F. Supp. 3d 491, 500 (M.D.N.C. 2014). Likewise here, the basis of Defendant's liability is not based on its independent contractor relationship with GEO; rather, Plaintiff has alleged that the USMS breached its undelegated duty to provide Plaintiff with adequate offsite medical care, a duty which it independently owed to Plaintiff by virtue of its relationship with Plaintiff, not its relationship with GEO. *See Doe v. Scott*, 652 F. Supp. 549, 551-53 (S.D.N.Y. 1983) (holding that allegations that the government's duty to protect the plaintiff victims, which it assumed long before the events giving rise to the action, arose by virtue of the relationship between the government and the plaintiffs, not the government and the attacker, and thus the plaintiffs "[did] not merely allege a general failure on the part of government officials to supervise [the attacker]," but rather

"alleg[ed]…specific acts or omissions by [the] officials [that were] quite separate from allegations of assault committed by the [attacker]" (citation omitted)).

For this reason, this case is distinguishable from the main case on which Defendant relies to argue that the exception applies to allegations of negligent supervision of an independent contractor, *Hodge v. United States*, 443 F. Supp. 2d 795 (E.D. Va. 2006). In *Hodge*, the federal Bureau of Prisons ("BOP") had no separate duty to treat the plaintiff's foot-related ailment because the government had delegated its entire duty in that area to an independent contractor: BOP had contracted with an independent physician "to provide care for ***all*** aspects of foot-related ailments." *Id.* at 800 (emphasis in original). Because BOP had delegated its entire duty, the only basis for BOP's liability depended on the physician's negligence. Since BOP was immune from liability for the negligence of the physician under the independent contractor exception, it was also immune for any alleged negligent supervision of the physician. *See id.* at 798. Conversely, the USMS "voluntarily assumed a duty" to protect Plaintiff's health and safety by placing him under its custody, it retained the part of that duty requiring it to provide adequate offsite medical care, and it breached that duty; Plaintiff's claim therefore arises "out of the breach of [the USMS's] affirmative duty" to him, not ADF's negligence. *Doe v. United States*, 838 F.2d 220, 222-23 (7th Cir. 1988).[3]

---

[3] The other cases cited by Defendant are likewise distinguishable. For instance, in *Blankenship v. United States*, the court emphasized that when the Salem Veterans Affairs Medical Center hired a physicians staffing agency to provide medical services to its patients, including the plaintiff, it delegated to the agency's physicians the entire responsibility to ensure that safety regulations and general standards of care were followed. 210 F. Supp. 3d 857, 862 (W.D. Va. 2016). Thus, unlike in this case where the parties' Contract plainly provides the USMS with authority to make

**B. Colorado tort law imposes the basis of Defendant's duty to Plaintiff.**

Once it becomes clear that the USMS retained a duty to protect Plaintiff, the answer to one of this Court's prescribed topic for this Surreply—the emergence of any independent duty for USMS to investigate once it knew of Plaintiff's medical complaints—also becomes clear. The USMS had a duty to further investigate Plaintiff's medical condition and needs because under Colorado tort law, the USMS had a duty to act reasonably—how a reasonably prudent individual under the same or similar circumstances would act—in performing its undelegated duty to provide adequate and timely offsite medical care. For the USMS to meet this duty, it first needed to determine whether Plaintiff needed offsite medical care. To do so, given the numerous and repeated complaints and concerns about Plaintiff's medical condition, as well as the information the USMS learned from escorting Plaintiff to court proceedings and the requests for offsite medical care submitted by ADF, the USMS should have known (i.e., a reasonably prudent individual would have realized) that it needed more information beyond Dr. Peterson's bare assurances. For this reason, the USMS acted negligently in failing to take any other actions besides asking Dr. Peterson if Plaintiff's, his family's, and his legal team's repeated complaints and concerns about the care provided by Dr. Peterson was

---

decisions and take actions related to offsite medical care for ADF detainees, the federal employees in *Blankenship* had no authority to intervene in the care the contract physicians provided. Similarly, because, as described above, Plaintiff does not allege that the USMS's liability is based on its failure to adequately supervise Dr. Peterson, cases holding that the discretionary function exception covers claims based on the government's supervision of independent contractors or other non-government actors are inapplicable. *See, e.g, United States v. S.A. Empresa De Vicao Aerea Rio Grandense (Varig Airplanes)*, 467 U.S. 797, 819-20 (1984); *Hudson v. United States*, 2008 U.S. Dist. LEXIS 13859, at *21-23 (E.D. Tenn. Feb. 25, 2008).

accurate.

"The FTCA makes the United States liable for negligence…'in the same manner and to the same extent as a private individual under like circumstances.'" *Klepper v. Milford*, 825 F.2d 1440, 1448 (10th Cir. 1987) (quoting 28 U.S.C. § 2674). Under Colorado negligence law, the USMS had a duty of care to Plaintiff because it "[took] custody of [Plaintiff] such as to deprive [him] of his normal opportunities for protection," giving rise to a duty to take affirmative protective action, including by the provision of medical care. *Perreira v. State*, 768 P.2d 1198, 1208 (Colo. 1989); *see also Henderson v. Gunther*, 931 P.2d 1150, 1156 & n.12 (Colo. 1997) (recognizing that a custodial relationship constitutes a special relationship giving rise to an affirmative duty to act). While the USMS could delegate this duty, it could not "simply abdicate its responsibilities for undelegated duties." *Harvey*, 2017 U.S. Dist. LEXIS 106128, at *2. Because the USMS did not fully delegate its duty to provide Plaintiff medical care and instead retained a duty over offsite medical care, its had a responsibility to perform this duty non-negligently. Once it was on notice that Plaintiff potentially needed offsite medical care, it could decide to believe Dr. Peterson's assurances otherwise—but if it was unreasonable for it to do so without taking any other further actions, it is liable for negligence, to the same degree a private individual under Colorado negligence law would be if such individual had a similar duty of protection.[4]

---

[4] Defendant takes issue with Plaintiff's claim that the USMS breached its undelegated duty of care by not taking reasonable actions related to providing timely and adequate offsite medical care once it "knew or should have known" that he was at substantial risk of serious harm. [Doc. 43] at 16. However, the "knew or should have known" language is irrelevant to any of the

Thus, contrary to Defendant's arguments, Plaintiff need not point to the parties' Contract or some statute or case on point to show that the USMS's undelegated duty to Plaintiff required it take further action beyond what it did. The "genesis" for Defendant's affirmative duty to act reasonably to protect Plaintiff from unreasonable risk of harm "lies in the jurisprudence of tort law,…not the terms of the parties' [C]ontract." *Groh v. Westin Operator, LLC*, 2013 COA 39, ¶ 28; *see also Restatement (Second) of Torts* § 314A(4) (explaining that one "who voluntarily takes custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a…duty to the other" to "protect [him] against unreasonable risk of physical harm"). As the Tenth Circuit has remarked, exceptions to the FTCA do not provide defendants a *per se* license to ignore their duties under tort law. *Smith v. United States*, 546 F.2d 872, 877 (10th Cir. 1976).[5]

---

jurisdictional facts at issue here and relates only to the merits of the case. Under general tort law principles, if an individual owes a duty of care to another (as Defendant did here), the individual must act to avoid unreasonable risk of harm to the other if risk of harm is the reasonably foreseeable consequence of the failure to act. *See Lyons v. Nasby*, 770 P.2d 1250, 1254 (Colo. 1989) ("A person has a duty to act or refrain from acting when it is reasonably foreseeable that the failure to act or refrain will create an unreasonable risk of harm to another."). Whether the USMS should have taken further action to provide Plaintiff adequate and timely offsite care depends on whether it was reasonably foreseeable—whether the USMS knew or should have known—that its failure to do so created an unreasonable risk of harm to Plaintiff because Plaintiff was not receiving adequate medical care at ADF. Plaintiff need not establish, in response to Defendant's Rule 12(b)(1) motion to dismiss, that this Court should answer this question affirmatively. Rather, Plaintiff needs to show only that the USMS owed him a duty of care that it did not fully delegate to GEO, and the alleged breach of this duty caused the harm he alleged. Plaintiff has met this burden.

[5] As Plaintiff explained in his response to Defendant's motion to dismiss, Defendant is incorrect in asserting that courts have uniformly rejected FTCA liability under a nondelegable duty doctrine, with the Tenth Circuit apparently taken conflicting views in different cases. [Doc. 37] at 22-23 n.7. While Plaintiff believes the better view is to permit liability if applicable state law would so permit under the same circumstances if the actor were private, because Plaintiff is not

**C.** **The discretionary function exception does not bar the USMS's liability because the USMS's acts and omissions were not of the type associated with the exercise of official discretion.**

Defendant, and the cases it cites in support of its argument, consistently conflates the two separate prongs of the discretionary function exception test prescribed by the Supreme Court. In determining whether the discretionary function exception applies, courts "must apply the two-step analysis developed by the Supreme Court in *Berkovitz v. United States*." *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995) (citing *Berkovitz*, 486 U.S. 531 (1988)). First, a court must consider "whether the action is a matter of choice for the acting employee." *Id.* (citation omitted) "[T]he discretionary function exception does not shield conduct that is specifically mandated by a federal statute, regulation, or policy." *Id.* If a federal statute, regulation, or policy does not govern the challenged conduct, the discretionary function exception nevertheless *will not apply* **unless** the act was "of the kind that the discretionary function exception was designed to shield.'" *Id.* at 790 (quoting *Berkovitz*, 486 U.S. at 536). The discretionary function exception "protects only governmental actions and decisions based on considerations of public policy."

Plaintiff concedes that no federal statute, regulation, or policy required the USMS to provide him with timely and adequate offsite medical care once on notice that his

---

relying on GEO's or Dr. Peterson's negligence as the basis for the United States' liability but rather has alleged that the United States itself was negligent, this Court need not decide the nondelegable duty issue. Thus, Defendant's argument in its reply that Colorado nondelegable duty law does not provide a means of recovery here is essentially irrelevant, since the basis of Plaintiff's claim is the breach of its *undelegated* duties, imposed by Colorado tort law under the special relationship doctrine.

medical condition was significantly deteriorating. However, the discretionary function exception does not shield the USMS's failure to do so—and its accompanying decision to blindly believe Dr. Peterson's assurances—because the USMS's failure to provide such adequate medical treatment "is not the type of judgment or choice which the discretionary function exception is intended to shield." *Ajaj v. United States*, No. 03-cv-01959-MSK-PAC, 2006 U.S. Dist. LEXIS 31653, at *9-14 (D. Colo. May 11, 2006). Merely classifying as "discretionary" its choice to, for example, accept Dr. Peterson's word that Plaintiff's medical care at ADF was adequate does not show that the discretionary function exception applies to that choice. "The existence of choice is essential to the application of the exception,…but does not alone justify its application." *Camozzi v. Roland/Miller & Hope Consulting Grp.*, 866 F.2d 287, 289 (9th Cir. 1989).

Indeed, courts only reach the second prong of the *Berkowitz* test when the government employee whose conduct is at issue had a choice—exercised discretion—in how to act. As the Sixth Circuit explained, conferring the discretionary function exception "on all governmental activities and conduct that permitted or required the exercise of an election or option…would be in derogation of the congressional intent incorporated into the FTCA" because it "would effectively immunize almost all government activity from suit under the FTCA." *Chotin Transp., Inc. v. United States*, 819 F.2d 1342, 1367 (6th Cir. 1987) (citation omitted). "[W]hen **properly** construed, the [discretionary function] exception protects only governmental actions and dcisions based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (emphasis added).

For this reason, Defendant's discussion regarding *Ahern v. United States* in its reply in support of its motion to dismiss misses the mark. *Ahern* held that the discretionary function exception covered the USMS's decision to place the plaintiff, a federal detainee, at a facility owned and run by an independent contractor, as well as "any negligent conduct by…marshals" to whom the plaintiff "communicated…his multiple concerns over the medical care he received at [the contracted facility]." 2017 U.S. Dist. LEXIS 76923, *24 (S.D. Tex. May 19, 2017). The only analysis the court provided in support of this conclusion is as follows:

> [The plaintiff] failed to point to any statute or regulation that confer[ed] a nondiscretionary duty on the part of the [USMS], especially when all medical care matters inside the facility [had] been delegated to [the contractor]. The decision to entrust [the contractor] with these medical care decisions comports with the USMS's overarching decision to contract with [the contractor] for the housing and safekeeping of federal detainees like [the] [p]laintiff.

*Id.*

It appears that the court conflated the two prongs of the *Berkowitz* test; as explained above, whether a statute or regulation confers a nondiscretionary duty on a government official is only the first prong. *See Berkovitz*, 486 U.S. at 536. Assuming the court proceeded to the second prong, the court's conclusion is irrelevant to this case because the challenged decision is not related to the USMS's delegation to GEO "medical care matters ***inside*** [ADF]." *Id.* (emphasis added). Rather, Plaintiff alleges that the USMS violated its undelegated duty to provide him with timely and adequate ***offsite*** medical care. The challenged decision is thus related to an undelegated duty that is separate from and not encompassed by the USMS's decision to delegate to GEO the duty

to provide medical care inside ADF. Moreover, contrary to Defendant's argument, the parties' Contract provides the basis for Plaintiff's claim because it plainly shows that GEO (ADF) retained a duty to provide ADF detainees with offsite medical care; as explained in the previous section, Colorado tort law supplies the duty to do so in the same manner as a reasonably prudent individual under the same or similar circumstances.

The other cases cited by Defendant in its reply are likewise unpersuasive or distinguishable. In *Bethae v. United States*, the plaintiff, a USMS detainee at a prison run by an independent contractor, alleged that the USMS was negligent in not transferring him to another institution. 465 F. Supp. 2d 575, 582 (D.S.C. 2006). While Plaintiff also believes that the USMS should have transferred him to another institution, he acknowledges that decisions regarding placement of detainees are susceptible to policy analysis. However, the decision whether the discretionary function exception applies depends on "the specific allegation[s] asserted by [the plaintiff]." *Ayala v. United States*, 980 F.2d 1342, 1348 (10th Cir. 1992) ("*Berkovitz* makes clear that the application of the discretionary function exception turns upon an examination of the nature of the challenged conduct."). Plaintiff asserts that the USMS should have provided him adequate and timely nonemergent offsite medical care by, for example, having him taken to the hospital. "[T]he United States is not immune from claims which challenge the actual administration of medical care by its employees when the claims do not concern actions which are the product of judgment driven by the consideration of competing policy-based concerns." *Bei Lei Fang v. United States*, 140 F.2d 1238, 1241 (9th Cir. 1998).

In deciding to believe Dr. Peterson's assurances over Plaintiff's, his family's, and his criminal defense team's complaints and concerns, the USMS "did not have to weigh the allocation of scarce resources, nor was [it] confronted with a broad emergency situation in which [it] needed to balance Plaintiff's needs against those of countless others." *Carcamo-Lopez v. Doe* 865 F.2d 736, 758 W.D. Tex. 2011). Rather, the USMS "had only one issue to consider, namely, Plaintiff's health," and the decision not to have Plaintiff provided with nonemergent offsite care "was comparatively straightforward, involving only the question of the best course of action from a medical perspective." *Id.* In fact, "it would be difficult to understand what policy factors could have been considered" in the USMS choosing not to provide Plaintiff with such medical care. *Raymond v. United States*, 923 F. Supp. 1419, 1423 (D. Kan. 1996) (citation omitted). Thus, although the decision was discretionary, the USMS's actions were not of the type the discretionary function exception was designed to protect. *Id.*[6]

---

[6] Like *Bethae*, *Blankenship* is also inapplicable. As described above, *see supra* note 3, in *Blankenship*, the Salem Veterans Affairs Medical Center hired a physicians staffing agency to provide medical services to its patients, including the plaintiff. 210 F. Supp. at 862. In doing so, it delegated to the agency's physicians the entire responsibility to ensure that safety regulations and general standards of care were followed, and it vested the power to direct the agency's physician's services in the staffing agency. *Id.* at 861. In holding that the VA medical center's surgical team's choice to not intervene when the physician's treatment of the plaintiff appeared deficient, the court emphasized that the plaintiff did not cite any regulations, statutes, or policies that would have required the team to do so, and therefore the discretionary function exception applied. *Id.* at 862. However, in so concluding, the court erroneously, like Defendant here, only reached the first prong of the *Berkowitz* test and did not analyze the second. Even without the error, *Blankenship* is not persuasive because it is distinguishable. The court in *Blankenship* found that the VA medical center had delegated its entire duty of care to the agency's physicians, including the supervision of those physicians. Interpreting the plaintiff's claim to be a claim essentially of negligent supervision, the court held that the decision "as to which individuals would supervise [the agency's physicians], and the[] decision as to the extent of supervision, [were] grounded in policy considerations and thus discretionary." *Id.* at 861. (Although in this

Lastly, Defendant's essentially argue that because the government has finite resources, the USMS's decision not to timely provide Plaintiff adequate offsite medical care once on notice of his significantly deteriorating condition must be discretionary. *See* [Doc. 43] at 22-23. But "virtually all government actions affect costs since the actions themselves require resources." *Routh v. United States*, 941 F.2d 853, 856 (9th Cir. 1991). "Because resources are limited, it is axiomatic that discretion must be used in allocating available resources," and "[t]he need for expedition versus the need for safety arises several times a day for many federal employees." *Phillips v. United States*, 956 F.2d 1071, 1075 (11th Cir. 1992). "Nevertheless, this does not mean that a federal employee's every choice is a policy judgment shielded from liability through the operation of the discretionary function exception." *Id.*

Otherwise, because "[b]udgetary constraints…underlie virtually all government activity," "this approach…would not only eviscerate the second step of the analysis set

---

analysis as well the court appears to repeatedly conflate the two prongs of *Berkowitz*, *see id.* at 861, 862). Plaintiff's claim, as explained above, is not based on the USMS's failure to supervise ADF's medical team of the USMS's negligent oversight of ADF, but rather on the USMS's breach of its own independent duty to provide Plaintiff adequate offsite medical care; the USMS was not responsible for ensuring ADF met its duty of care to Plaintiff, it was responsible for meeting its own, separate duty of care. *Varig Airlines* is distinguishable for the same reason: it addressed a decision by the FAA regarding "the extent to which it [would] supervise the safety procedures of private individuals." 467 U.S. at 819. *Varig Airlines* is further distinguishable because the Court held that this sort of decision "require[d] the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding." *Id.* at 820. The USMS's decision to believe Dr. Peterson's bare assurances that ADF was meeting Plaintiff's medical needs does not involve any such balancing, nor does it even implicate the USMS's policy objectives. *See Whisnant v. United States*, 400 F.3d 1177, 1184 (9th Cir. 2005) (explaining that *Varig Airlines* addressed "[c]omplex decisions about confidence in corporations, maximizing compliance with regulations, and allocation of limited resources among competing safety-promoting tasks," which "hardly resemble" a decision by government employees to "at best, shirk[] safe maintenance," and "at worst constitutes simple carelessness").

out in *Berkovitz* and *Gaubert*, but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity." *Cope v. Scott*, 45 F.3d 445, 449 (D.C. Cir. 1995) (citation omitted). Consequently, "[t]he mere association of a decision with regulatory concerns is not enough" for the exception to apply; rather, "exempt decisions are those fraught with … public policy considerations," and "[t]he mere presence of choice—even if that choice involves whether money should be spent—does not trigger the exception." *Id.* (citation omitted); *accord Duke by Duke v. Dep't of Agric.*, 131 F.3d 1407, 1410-11 (10th Cir. 1997) (discussing and quoting *Cope* with approval).[7]

Accordingly, while in the broadest sense Defendant is correct that the USMS could choose the manner in which to address Plaintiff's concerns regarding the medical care he received at ADF, the discretionary function exception does not shield its choices from FTCA liability if they resulted in the negligent failure of the USMS to meet its duty to provide Plaintiff adequate nonemergent, offsite medical care. Whether Plaintiff can succeed on his claim that such failure by the USMS did constitute negligence is a matter for another day, and not relevant to the resolution of Defendant's jurisdictional motion to dismiss.

## IV. CONCLUSION

---

[7] Among other cases, Defendant cites *Harrell v. United States* to argue that the discretionary function exception applies to decisions by the government that "take[] into account the question of how to allocate limited resources among competing needs." 2005 U.S. Dist. LEXIS 4519, at *9 (D. Kan. Mar. 22, 2005). However, in *Harrell*, the relevant decision was the Coast Guard's macro level decision regarding "whether and when to service" buoys in the Missouri River. *Id.* at *8. That decision implicated the Coast Guard's every action and inaction related to the service of all buoys in the river for a sustained period of time and essentially amounted to a policy governing the issue. Conversely, the USMS's decision not to provide one individual with offsite medical care during a period of less than a few months does not govern any other actions or inactions by the USMS.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.

Respectfully submitted this 16th day of November 2018.

KILLMER, LANE & NEWMAN, LLP


s/*Liana Orshan*
David A. Lane
Liana Orshan
1543 Champa Street, Suite 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dlane@kln-law.com
lorshan@kln-law.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of November 2018 I filed this **PLAINTIFF'S SURREPLY TO UNITED STATES' REPLY TO MOTION TO DISMISS** via CM/ECF, and CM/ECF will generate a Notice of Electronic Filing to the following:

Christopher Allman
Andrea Taylor
Assistant United States Attorneys
District of Kansas
500 State Avenue, Suite 360
Kansas City, KS 66101
Chris.Allman@usdoj.gov
Andrea.Taylor@usdoj.gov


                                                    *s/ Liana Orshan*
                                                    Liana Orshan